[Cite as *Swartz v. Univ. of Toledo Med. Ctr.*, 2013-Ohio-1516.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LAURIE Y. SWARTZ, et al.

    Plaintiffs

    v.

UNIVERSITY OF TOLEDO MEDICAL CENTER

    Defendant

Case No. 2011-07761

Magistrate Anderson M. Renick

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiffs brought this action against defendant, the University of Toledo Medical Center (UTMC), alleging negligence and loss of consortium. The parties entered into a stipulation on the issue of liability and the matter proceeded to trial on the issue of damages.

{¶ 2} This case arises from a surgical procedure that plaintiff Laurie Swartz underwent on February 2, 2009 at UTMC.[1] On that date, defendant's employee, Martin Skie, M.D., performed a right ulnar nerve transposition procedure and, during the course of the surgery, the ulnar nerve was transected. According to the stipulation, the parties agreed that the report of plaintiffs' expert, William Kirkpatrick, M.D., could be submitted as evidence in lieu of his testimony and that defendant waived its right to cross-examine Dr. Kirkpatrick. (Plaintiffs' Exhibit 1.) In his report, Dr. Kirkpatrick states as follows:

{¶ 3} "Ms. Swartz was a 47-year-old, right-hand dominant female who was employed as a probation officer who presented to Dr. Skie on January 13, 2009, with a two-year history of pain in the right upper extremity. An EMG had demonstrated

---

[1]For the purposes of this decision, "plaintiff" shall refer to Laurie Swartz.

evidence of a right cubital tunnel syndrome.  Surgical treatment with a transposition of the ulnar nerve was recommended and subsequently performed on February 2, 2009. Unfortunately, during the surgery, the ulnar nerve was transected.  Dr. Skie stated that the transection occurred with the tenotomy scissors most likely while 'sliding along the fascia'.  The ulnar nerve was repaired with magnification and a neuro-wrap and was transposed into a submuscular position.  Postoperatively, Ms. Swartz was treated for pain.  She also had difficulty at work and described hypersensitivity in her hand as well as ongoing pain.  She was referred to Dr. Atallah for management of a complex regional pain syndrome with stellate ganglion blocks.  She also underwent therapy.  On July 27, 2010, she was evaluated by Dr. Baibak who offered her the option of further surgery.  A second surgical procedure was performed on October 25, 2010, which included an extensive neurolysis of the right ulnar nerve.  The ulnar nerve repair appeared to 'have healed nicely', and he identified dilation of the nerve 'just proximal to where it dove under the flexor wad'.  The nerve was decompressed at that level.  Postoperatively, she continued to note some hypersensitivity and burning pain in the hand as of November 2010. * * * Ms. Swartz will be left with residual difficulties in the function of the right hand as well as with elements of a complex regional pain syndrome on a permanent basis." (Plaintiffs' Exhibit 1.)

{¶ 4} Plaintiff testified that she was employed at the Wood County Juvenile Court and that, prior to the surgery, she experienced numbness and burning in her right hand following a day of writing, filing, and typing.  Plaintiff related that her symptoms became worse over time and she eventually decided to undergo surgery to relieve those symptoms.  Plaintiff testified that, on the day after her surgery, she began to experience "excruciating pain" in her hand.  Dr. Skie recommended that plaintiff attend physical therapy sessions for approximately six weeks.  According to plaintiff, the physical therapy sessions helped to "get back some movement" in her fingers; however, the therapy exercises were very painful and the treatment did not reduce her pain or feeling

of hypersensitivity to heat and cold.  Plaintiff testified that Dr. Skie referred her to Dr. Atallah who administered injections in her neck and armpit to "block" her pain.  Plaintiff stated that her arm would feel "dead" for approximately six hours after the blocking shots, and then her symptoms would return.  On October 25, 2010, Laurence Baibak, M.D., performed a second surgery, which did not result in any relief from plaintiff's symptoms.  Plaintiff testified that she attended follow-up visits with Dr. Baibak until he informed her that there "was nothing else he could do."

{¶ 5} Dr. Baibak testified by way of deposition that he is a board-certified surgeon who specializes in plastic and reconstructive surgery, including hand surgery.  Dr. Baibak examined plaintiff and determined that her limited use of her right hand showed that there had been some "regeneration" of the ulnar nerve; however, she had "no true touch sensation when you touch the ulnar part of her hand" and that touching "basically just stimulated the severe burning pain that she had." (Plaintiffs' Exhibit 9, page 9.)  Dr. Baibak also observed that certain muscles associated with the ulnar nerve were "non-functional."  Based upon his examination, Dr. Baibak's diagnosis was that plaintiff's condition was caused by either a neuroma from scar tissue or causalgia and Reflex Sympathetic Dystrophy (RSD).  Dr. Baibak explained that causalgia and RSD tend to be permanent whereas pain from a neuroma pressing on a nerve "could be potentially reversed" by surgery.  During the October 25, 2010 surgery, Dr. Baibak noted that the site of the repair to the ulnar nerve had healed and there was no neuroma or large area of scar tissue.  Dr. Baibak's diagnosis was neuropathy, a malfunctioning nerve that caused plaintiff's hypersensitivity and burning sensations.  Plaintiff's last visit with Dr. Baibak occurred approximately three weeks following the second surgery, during which no change in plaintiff's symptoms were noted.  Dr. Baibak opined that plaintiff's symptoms most likely would not improve and that the hypersensitivity and difficulty she experienced when using her right hand to perform tasks such as writing and eating were permanent.

{¶ 6} On June 4, 2012, James Popp, M.D., performed an independent medical examination of plaintiff to evaluate the current condition of her right hand. Dr. Popp determined that plaintiff has "chronic regional pain syndrome of her right upper extremity in the ulnar nerve distribution" which affects her daily activities. Dr. Popp noted plaintiff was hypersensitive to light touch and that she "may benefit" from "some sort" of rehabilitation and pain medication. Dr. Popp also recommended an evaluation by another hand surgeon.

{¶ 7} Plaintiff maintains that she has ongoing pain and hypersensitvity, limitation of movement of several fingers, as well as atrophy and cramping of certain muscles in her right hand. Both plaintiff and her husband, plaintiff Paul Swartz, testified that plaintiff has difficulty sleeping due to the sensitivity and pain in her right hand and fingers. Plaintiffs related that they had previously enjoyed riding bicycles, sailing, and gardening together, but that such activities are now very painful for plaintiff. Plaintiff testified that daily chores such as cooking, showering, and dressing take longer to perform and cause her fatigue. Plaintiff stated that she is limited to wearing clothing with short sleeves and that her husband must trim the fingernails on her right hand because the task is too painful for her to perform.

{¶ 8} With regard to her employment, plaintiff testified that she returned to work after the operation, but that her performance was negatively impacted by her pain and the limited use of her right hand. Plaintiff testified that her employer provided her with a voice recognition program to reduce the amount of writing and typing she was required to perform; however, she discovered that the program was not compatible with other office software programs. Plaintiff explained that, despite her efforts to complete assignments by working during her lunch break and at home, she could not adequately perform her employment duties. Although plaintiff was not eligible to receive a pension until she attained the age of 55, she testified that she resigned her position several

years early because her decreased performance had become a burden for her coworkers and adversely affected the families they served.

{¶ 9} Annette Haskins testified by way of deposition that she was the director of the probation department at Wood County Juvenile Court and that she had been plaintiff's supervisor during plaintiff's employment with the court. Haskins related that she had known plaintiff prior to their employment in Wood County and that she periodically socialized with plaintiff and her husband. Haskins testified that plaintiff appeared frustrated by the difficulty she had performing some of her job duties when she returned to work after her surgery.

{¶ 10} With regard to plaintiff's claim for damages related to her early retirement, the court finds that plaintiff's injuries affected her work performance, but did not prevent her from remaining employed. Although plaintiff testified that she felt compelled to resign her employment as a result of her injuries, both plaintiff and her supervisor acknowledged that she was able to complete her assigned duties. Indeed, Haskins testified that plaintiff required additional time to perform some of her duties after the surgery, however, she continued to be an "excellent" employee. Plaintiff conceded that she did not apply for disability-retirement benefits and that no one suggested that she should resign. Paul Swartz testified that, prior to the surgery, he had retired and plaintiffs had considered plaintiff retiring at 50 years of age so that they could spend more time together. Although the court is persuaded that plaintiff's injuries had some impact on her work performance, the court finds that plaintiffs have failed to prove that her injuries were the cause of her resignation such that she is entitled to damages related to her early retirement.

{¶ 11} Upon review of the evidence, the court finds that the condition which causes pain and hypersensitivity in plaintiff's right hand is permanent in nature and affects her daily activities. Based upon the totality of the evidence, the court finds that damages for plaintiff's past and future pain and suffering and past and future loss of

enjoyment of life exceed the $250,000 per person limit set forth in R.C. 3345.40(B)(3).[2] Accordingly, it is recommended that plaintiff be awarded $250,000 for her loss. It is recommended that Paul Swartz be awarded $150,000 for his loss of consortium.

{¶ 12} Plaintiff testified that Plaintiffs' Exhibit 3 represents a compilation of the expenses incurred for her medical treatment, less insurance payments. According to plaintiff's records, her out-of-pocket expenses for medical treatment total $853.88. Therefore, it is recommended that plaintiffs be awarded compensatory damages for medical bills in the amount of $853.88.

{¶ 13} For the foregoing reasons, it is recommended that judgment be rendered in favor of plaintiffs in the amount of $400,878.88, which includes the $25 filing fee.

---

[2]R.C. 3345.40 states, in relevant part:

"(B) Notwithstanding any other provision of the Revised Code or rules of a court to the contrary, in an action against a state university or college to recover damages for injury, death, or loss to persons or property caused by an act or omission of the state university or college itself, by an act or omission of any trustee, officer, or employee of the state university or college while acting within the scope of his employment or official responsibilities, or by an act or omission of any other person authorized to act on behalf of the state university or college that occurred while he was engaged in activities at the request or direction, or for the benefit, of the state university or college, the following rules shall apply:

"* * *

"(2) If a plaintiff receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against the state university or college recovered by the plaintiff. No insurer or other person is entitled to bring a civil action under a subrogation provision in an insurance or other contract against a state university or college with respect to such benefits.

"Nothing in this division affects or shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds.

"(3) There shall not be any limitation on compensatory damages that represent the actual loss of the person who is awarded the damages. However, except in wrongful death actions brought pursuant to Chapter 2125. of the Revised Code, damages that arise from the same cause of action, transaction or occurrence, or series of transactions or occurrences and that do not represent the actual loss of the person who is awarded the *damages shall not exceed two hundred fifty thousand dollars in favor of any one person.* The limitation on damages that do not represent the actual loss of the person who is awarded the damages provided in this division does not apply to court costs that are awarded to a plaintiff, or to interest on a judgment rendered in favor of a plaintiff, in an action against a state university or college." (Emphasis added.)

{¶ 14} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Anne B. Strait
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Robert M. Scott
416 North Erie Street, Suite 400
Toledo, Ohio 43604-5622

004
Filed February 6, 2013
To S.C. Reporter April 16, 2013